SEAFOAM, INC., Plaintiff-Appellant,

v.

BARRIER SYSTEMS, INC.,
Defendant-Appellee.

No. 87–3265
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 21, 1987.

Louis R. Koerner, Jr., New Orleans, La., for plaintiff-appellant.

Christopher J. Aubert, Dermot S. McGlinchey, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this case, appellant, Seafoam, Inc., the purchaser of a product brought suit against appellee Barrier Systems, Inc., the manufacturer of the product, under several theories of recovery for damages sustained by Seafoam due to lack of proper performance of the product. Barrier moved for partial summary judgment, asserting that one of Seafoam's claims was based on redhibition and had prescribed. The district court granted Barrier's motion and then dismissed the remainder of Seafoam's suit as lacking the basis of diversity jurisdiction. The district court also denied Seafoam's Motion to Leave to File an Amended Complaint.

Seafoam, Inc. is in the business of applying polyurethane foam as insulation for freezers. USDA regulations and local building codes require a thermal barrier over polyurethane insulation due to the foam's flammable and fragile nature. Barrier Systems makes a thermal barrier called Staytex. In June 1984, Seafoam purchased a quantity of Staytex from Barrier as a thermal barrier for Seafoam's insulation work at Terrebonne Canning. Seafoam asserts it decided to use Staytex based on Barrier's representations in its sales literature and on personal assurances from Barrier representatives that Staytex would meet the Terrebonne project's requirements concerning thermal barriers.

In August 1984, after reviewing the proper application procedures with a representative of Barrier, Seafoam employees applied the Staytex to the walls of the Terrebonne cooler as a thermal barrier over recently installed polyurethane insulation. No Barrier employees participated in this application of Staytex. Within a few weeks, after the Terrebonne cooler had been brought down to operating temperature, problems with the Staytex thermal

barrier began to appear. Seafoam immediately contacted Barrier to inquire as to the problems and how to correct them. Barrier denied any responsibility, claiming that the problems with the Staytex resulted from improper application by Seafoam's employees.

As a result of the problems with the Staytex thermal barrier, Terrebonne paid Seafoam only one-half of Seafoam's fee for the insulation work. In March 1985, Seafoam attempted to remedy the problems. Barrier continued to deny any responsibility and refused Seafoam's requests to help remedy them. Seafoam, because of Barrier's representations, decided the previous problems with the Staytex were the result of improper application. It agreed to pay Barrier for additional Staytex, for the use of Barrier's technical director to supervise its application, and for Barrier's application equipment. Seafoam had to pay these costs with no discount from Barrier.

In April 1985, Seafoam employees prepared a large test area at the Terrebonne project for a reapplication of Staytex which was done by a Barrier employee with the proper Barrier application equipment. The newly applied Staytex developed similar problems, and Seafoam decided to discontinue the reapplication work. In December 1985, after Barrier refused to refund any of the amount Seafoam had paid for the reapplication effort, Seafoam sent Barrier a demand letter. It asserted that if Barrier did not refund the money and resolve the problems resulting from the failures of Staytex at the Terrebonne cooler, Seafoam would institute legal action. On March 24, 1986, after Barrier failed to meet Seafoam's demands, Seafoam filed a diversity jurisdiction suit against Barrier in the United States District Court for the Eastern District of Louisiana. 28 U.S.C. § 1332.

During discovery, Seafoam learned that other purchasers of Staytex had experienced similar problems with the product and that Barrier was aware of these problems prior to June 1984, when Seafoam ordered the Staytex from Barrier.

Seafoam's initial complaint alleged fraudulent misrepresentation, breach of express warranty, breaches of implied warranties, and "other violations of the laws of Louisiana." Barrier moved for partial summary judgment based on prescription. Barrier claimed that the two applications of Staytex were separate transactions [1], and because Seafoam's cause of action was actually solely one of redhibition [2], the one-year prescriptive period applicable to redhibition barred Seafoam's recovery for the August 1984 application. The district court granted Barrier's motion for summary judgment and dismissed Seafoam's suit on the grounds of prescription of the earlier claim. It also held that Seafoam's potential recovery on the second transaction (the April 1985 application) was less than $10,000, failing to meet the requisite jurisdictional amount for a federal court's diversity jurisdiction. Seafoam appeals both decisions, as well as the district court's denial of Seafoam's Motion for Leave to File an Amended Complaint [3] which Seafoam filed

---

**1.** Seafoam disputed this contention and both parties addressed this issue in their respective summary judgment memoranda and in argument to this Court. Seafoam claims that the April 1985 application was a repair effort by Barrier and therefore the two applications constitute a single transaction. Barrier denies that the second application was a repair effort. If the April 1985 application were found to constitute a repair effort, then the redhibition prescription period for the entire transaction did not begin to run until the date the seller last attempted to repair the defect (April 1985 in this case, which makes Seafoam's entire claim within the one-year prescription period). *E.g.,* *Weaver v. Fleetwood Homes of Mississippi,* 327 So.2d 172, 176–77 (La.App.1976). Due to our holding, this issue need not be resolved at this time. This issue involves, however, a material fact issue that would need to be resolved by the factfinder.

**2.** Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice. La.Civ. Code Ann. art. 2520.

**3.** This amended complaint had two additional theories of recovery beyond those in the original complaint: failure of work by the job, and indemnity. The amended complaint also added Barrier's liability insurer as a defendant and clarified Seafoam's demands for damages.

prior to the granting of the motion for summary judgment.

## I.

■ The district court concluded that Seafoam's claims were based only on redhibition and that the claims involved separate transactions. The court held that the first claim for recovery on the August 1984 application had prescribed under the one-year prescription period for redhibition. The court did not explain the rationale for its determination that the claims were based solely on redhibition. There are obvious fact issues in deciding whether or not appellant's pleaded claims other than redhibition can be supported by evidence. With substantial fact issues, summary judgment is in error. The district court, however, relied upon a conclusion that Seafoam's claims for recovery on theories other than redhibition were foreclosed by *PPG Industries v. Industrial Laminates Corp.*, 664 F.2d 1332 (5th Cir.1982). We find that the district court incorrectly interpreted the holding of *PPG Industries* to reach its conclusion.

The facts of the case at bar are closely analogous to those of *Delta Refrigeration Co., Inc. v. Upjohn Co.*, 432 F.Supp. 124 (W.D.La.1977) *affirmed* 575 F.2d 879 (5th Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 574, 58 L.Ed.2d 655 (1978). In *Delta* the court found that the plaintiff's claim for recovery was not based on a hidden defect (a redhibitory vice) but on breach of express warranties the seller made when it sold its product to plaintiff. The product in *Delta* did not perform as promised and was incapable of doing so. The *Delta* case, and the case at bar, involve not only a claim that the particular item of product purchased was defectively manufactured (a

redhibition defect) but alternatively that the product in general could not live up to the warranties given. Under the latter theory, the ten-year prescriptive period applicable to breach of express warranties is applicable instead of the one-year period for redhibition.[4]

This Court carefully harmonized *Delta* in its holding in *PPG Industries*. In *PPG Industries*, the plaintiff sued to recover for damages resulting from a defectively manufactured product. The manufacturer acknowledged that the product had been defectively manufactured and had sent replacements that were found to be satisfactory. For that reason, this Court in *PPG Industries* held that plaintiff's cause of action "fits squarely into the definition of redhibition under Louisiana law." 664 F.2d at 1336. We listed other examples of the kind of problems the Louisiana courts had found to constitute redhibitory vices: a cracked engine block, termite damage, an inadequate building foundation, and a contaminated popsicle. 664 F.2d at 1336. The *PPG Industries* court acknowledged that the vice complained about in *Delta* did not fit under the rubric of redhibition as interpreted by the Louisiana courts. 664 F.2d at 1335.

The vice complained of in the case at bar is at least arguably the same as that complained of in *Delta:* a product was sold to the plaintiff under express warranties that the product was capable of satisfying certain requirements. But the product failed to do so, not because of any manufacturing defect, but because the product in general was incapable of performing the promised task. Furthermore, Seafoam, as well as the plaintiff in *Delta*, alleged fraudulent misrepresentations of a product's qualities by the seller. Fraudulent misrepresenta-

---

**4.** There is some doubt as to whether Seafoam's claim on the August 1984 transaction prescribed even if it were found to be based solely on redhibition. Redhibition actions in Louisiana prescribe one year from the buyer's discovery of the defect if the vendor knew or is chargeable with knowledge of the defect. This discovery is not to be presumed, but it must be proved by the seller. La.Civ.Code Ann. art. 2546. There is a conclusive presumption that a manufacturer knows of the defects in its products and is

therefore treated as a bad faith seller. *E.g., Phillipe v. Browning Arms, Co.,* 395 So.2d 310, 318 n. 15 (La.1981). Under the facts of this case, Seafoam arguably did not discover the "defect" in Staytex until April 1985 when it made the second application. Barrier had led Seafoam to believe the problems lay with improper application and not with a defect in the product. The March 1986 suit against Barrier would arguably be within the one-year prescriptive period for redhibition for this claim.

tion was not addressed by the *PPG Industries* court.[5]

For these reasons, the district court was incorrect in granting a summary judgment on the ground that Seafoam had separate claims based on redhibition, that one had prescribed, and that in any event, any other theories of recovery were foreclosed by *PPG Industries.* The district court's granting of appellee's motion for summary judgment must be reversed and the case remanded for trial by the district court. The trier of fact must determine whether Seafoam presents evidence adequate to establish theories of recovery beyond that of redhibition for the initial transaction. Alternatively, on the issue of prescription the court must make findings of fact as to whether Seafoam knew the product was defective before the second application.

## II.

We also mention briefly that the district court also was in error in dismissing Seafoam's suit against Barrier because of lack of the requisite amount in controversy. It is well established law that the jurisdiction of a federal court sitting in diversity is determined as of the time of filing of the complaint. Subsequent events such as a bar by a statute of limitations raised as a defense will not serve to deprive the court of jurisdiction. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). *Apicella v. Valley Forge Military Academy,* 630 F.Supp. 20, 24 (E.D.Pa.1985). If a statute of limitations reduces the amount claimed to an amount lower than the jurisdictional minimum, the district court still has jurisdiction to adjudi-

cate the rest of the claim. *Giffin v. Smith,* 256 F.Supp. 746, 747 (N.D.Okla.1966). *Cf. Griffin v. Red Run Lodge, Inc.,* 610 F.2d 1198, 1204 (4th Cir.1979) ("Once jurisdiction exists, subsequent events, such as the determination that one of the aggregated claims was without merit, do not destroy the jurisdictional basis to dispose, on the merits, of claims of $10,000 or less.").

The sum claimed by a plaintiff controls if that claim is made in apparent good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. *Red Cab,* 58 S.Ct. at 590. Such was not the case here. The aggregated claim of Seafoam's initial complaint exceeded $10,000, and there was in any event a good faith dispute as to whether the August 1984 transaction was a separate transaction founded solely on redhibition and barred by prescription. Furthermore, Barrier did not even plead the affirmative defense of prescription until February 3, 1987. The district court granted Barrier's motion to amend its answer to include this defense ten months after Seafoam had filed its original complaint, nine months after Barrier filed its original answer, and after extensive discovery had taken place. The district court was in error in dismissing Barrier's suit on jurisdictional grounds.

## III.

Finally, the district court upon remand should reconsider Seafoam's Motion for Leave to File an Amended Complaint. Under Rule 15(a) of the Federal Rules of Civil Procedure, a district court's permission to

---

**5.** It should be noted that La.Civ.Code Ann. art. 2529 is not applicable to *Delta* or to the case at bar. Art. 2529 reads: "A declaration made in good faith by the seller, that the thing sold has some quality which it is found not to have, gives rise to a redhibition, if this quality was the principal motive for making the purchase." Under the analysis detailed in footnote 4 *supra,* neither the seller in *Delta* nor Barrier in the case at bar, acted in good faith in declaring their respective product's qualities. Furthermore, there is some evidence that Barrier employees had actual knowledge of their product's deficiencies.

Compare La.Civ.Code Ann. art. 2547 which reads: "A declaration made by the seller, that the thing sold possesses some quality which he knows it does not possess, comes within the definition of fraud, and ought to be judged according to the rules laid down on the subject, under the title: *of conventional obligations.*" The prescription period for such a cause of action might well be 10 years under the fall back prescription provision. La.Civ.Code Ann. art. 3499.

amend "shall be freely given when justice so requires." [6]

### IV.

We find the district court in error in granting summary judgment based on prescription and in error in dismissing Seafoam's suit because of lack of jurisdictional amount. Both decisions are reversed for trial on the merits.

REVERSED.

---

**6.** Reconsideration is especially indicated in light of later developments in the dispute. After the district court dismissed Seafoam's case, Seafoam filed its amended complaint in Louisiana state court on April 9, 1987. On May 5, 1987, Barrier removed the case to federal court based on diversity and jurisdictional amount exceed-

ing $10,000. This position is of course inconsistent with Barrier's motion for summary judgment and its brief to this Court but may be justified because Seafoam's amended complaint contains two new theories of recovery (see footnote 3).