COMPREHENSIVE ADDICTION
PROGRAMS

v.

Anthony MENDOZA.

Civil Action No. 97–2979.

United States District Court,
E.D. Louisiana.

May 27, 1999.

Daniel Aubry Ranson, Windhorst, Gau-
dry, Ranson, Higgins & Gremillion, LLP,
Gretna, LA, for Plaintiff.

Sidney Donecio Torres, III, Roberta L. Burns, Law Offices of Sidney D. Torres, Chalmette, LA, for Defendant.

Arlene Carimi Edwards, Dampf & Edwards, Baton Rouge, LA, for movant.

PORTEOUS, District Judge.

Before this Court is Defendant's Motions for Dismissal or Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. This cause came for a hearing on a previous day and oral argument was waived. The Court, having studied the applicable law and the memoranda submitted by the parties is now fully advised of the premises and ready to rule.

## ORDER AND REASONS

## I. BACKGROUND

This cause of action arises from a Purchase Agreement ("Agreement") for the sale of certain commercial property entered into by Plaintiff Comprehensive Addition Programs, Inc. (CAP) and Defendant Anthony Mendoza on July 9, 1997. (Doc. 1). CAP agreed to sell and Mendoza agreed to purchase Bowling Green located in St. Tammany Parish for the price of $700,000.000. The Agreement provided for a closing date to take place on or prior to forty-five days from July 9, 1997. *Id.* The sale was conditioned upon the ability of Mendoza to borrow the sum of $700,000 by a mortgage loan secured by the property at a rate not to exceed ten percent per annum and payable over a period of fifteen years. Purchaser was obligated to make a good faith application for a loan within ten days of the acceptance and to obtain loan approval within fifteen days of the Agreement by CAP. Plaintiff accepted the Agreement on July 9, 1997. *Id.*

Mendoza was unable to secure the financing prior to the scheduled closing date resulting in two extensions. The first amendment, dated August 12, 1997 extended the closing deadline until August 29, 1997. (Doc. 51). The second amendment, dated August 28, 1997, extended the closing deadline until September 17, 1997. *Id.*

On September 10, 1997, Mendoza advised CAP of his inability to obtain financing and that he would not purchase the property. *Id.*

Plaintiff claims that Mendoza breached the Agreement and filed this suit requesting specific performance of the contract and extra contractual damages. Defendant filed a counterclaim asserting his entitlement to his $10,000.00 deposit.

## II. LAW AND ANALYSIS

### A. 12(b)(1) Motion to Dismiss for lack of Subject Matter Jurisdiction

CAP filed suit pursuant to 28 U.S.C. § 1332, diversity jurisdiction, and pled for two mutually exclusive theories of recovery, specific performance or damages. Specific performance is no longer an available remedy because plaintiff sold the property on September 18, 1998. Defendant now argues that because the contractually stipulated damages are not sufficient to meet the amount in controversy requirement this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

■ An action must be dismissed if it appears that the Court does not possess subject matter jurisdiction over the plaintiffs' claims. Fed.R.Civ.P. 12(b)(1), (h)(3). As the party invoking jurisdiction, the plaintiffs carry the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). Unlike the district court's review of a Rule 12(b)(6) motion to dismiss, the Court may examine evidence outside of the pleadings when deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

■ The amount in controversy is determined as of the time a complaint is filed. See *St. Paul Reins. Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). ("[T]he jurisdictional facts must be judged as of the time the complaint is filed."); *Seafoam, Inc. v. Barrier Sys.*,

*Inc.,* 830 F.2d 62, 66 (5 th Cir.1987). Courts look to the value of the property involved to determine the jurisdictional amount in suits for specific performance of a contract to convey realty. *Waller v. Professional Insurance Corp., et al.,* 296 F.2d 545 (5th Cir.1961), *citing Ebensberger v. Sinclair Refining Co.,* 165 F.2d 803 (5th Cir.1948).

■ At the time plaintiff filed this complaint, it was seeking specific performance or damages. Though specific performance is no longer an available remedy, at the time this suit was filed, the agreed upon price for sale of the property was $700,-000.00, a figure well above the required amount in controversy. Thus, this court maintains diversity jurisdiction.

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Mendoza asserts that CAP failed to state a claim for which relief can be granted in its claim for stipulated damages under the contract and extra contractual damages.

Under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint. *American Waste Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991). The Court may not dismiss a claim unless it appears certain that the claimant can not prove any set of facts in support of its claim that would entitle it to relief. *Home Capital Collateral v. Federal Deposit Ins. Corp.,* 96 F.3d 760, 764 (5th Cir.1996).

■ A contract subject to a suspensive condition, meaning a stipulation in a contract to sell that makes a sale conditioned upon a purchaser's ability to obtain a stipulated loan to finance the purchase, imposes a duty on the purchaser to make a good faith effort to obtain a loan. *Woods v. Austin,* 347 So.2d 897, 899 (La.App. 3d Cir.1977). Whether a purchaser acted in good faith is a question of fact and circumstances. *Id.* "If the purchaser, through no fault of his own, is unable to obtain the loan, he is released from his obligation to

purchase and is entitled to the return of his deposit." *Id., citing,* [ (*Treadaway v. Piazza,* 156 So.2d 328 (La.App. 4 Cir.1963); *Liuzza v. Panzer,* 333 So.2d 689 (La.App. 4 Cir.1976); *Morrison v. Mioton,* 163 La. 1065, 113 So. 456 (1927)).]

Accepting the pleaded facts as true, it is certainly conceivable that CAP can prove a set of facts in support of its claim that would entitle it to relief. If defendant did not act in good faith, the plaintiff may be entitled to the stipulated and extra contractual damages. Consequently, there is a scenario under which plaintiffs would be entitled to relief making dismissal for failure to state a claim inappropriate.

### C. 56(c) Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), Mendoza asserts (1) that the Agreement executed by the parties in this matter became null and void, expiring under its own terms, when Mendoza timely satisfied his contractual obligation to make a good faith application for the requisite financing for the purchase, which was subsequently denied by his lender; (2) he is relieved from his obligations under the Agreement because CAP breached the Agreement when it failed to obtain financing within the fifteen day period set forth in the agreement; and (3) he is relieved from his obligations under the Agreement because CAP failed to provide an acceptable wetlands determination prior to the closing date as provided in the Agreement.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it be-

lieves demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.1992)) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also, Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Industrial Co.*, 475 U.S. at 588, 106 S.Ct. 1348. Finally, the Court notes that the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Mendoza owns and operates a retirement home in St. Bernard Parish. (Doc. 50). Prior to the events leading up to this litigation he was in the process of constructing a new nursing home facility within St. Bernard Parish, with the entire two million dollar venture being financed by First National Bank of Houma ("First National"), now known as the Whitney Bank ("Whitney"). (Doc. 50). Mendoza became interested in Bowling Green property because he was interested in developing it into an assisted living facility. (Doc. 50). CAP had listed the property for sale with Stirling Properties and C.L. "Bucky" Meredith was the agent handling the listing. (Doc. 54).

On June 25, 1997 Mendoza contacted Meredith and made an offer of $625,000.00 to purchase the property and was interested in closing the sale within 30 days. (Doc. 54). At CAP's instructions Meredith countered the offer for $700,000.00, to which Mendoza further countered with $675,000.000 however, $700,000.00 was the ultimate price settled upon. (Doc. 54).

On June 30, 1997, Mendoza brought his bankers from First National, William Caillouet and Harold Favret, to the property for a site visit. (Doc. 50). According to Mr. Caillouet and Mr. Favret, they considered Mendoza's request for funds at the site as an application for a loan. (Doc. 50). During the site visit Mendoza and his bankers discussed the details of the loan for which he applied including: the amount (for purchase and renovation), terms, the 9% interest rate, the closing attorney, and the need for Mendoza to acquire a one million dollar life insurance policy naming the bank as beneficiary. (Doc. 50). Mendoza believed that his application had been, essentially, approved. (Doc. 50). Mr. Favret testified that he may have told the defendant that the loan approval process could be completed in two weeks. (Doc. 50). Subsequently, and at the bank's request, Mendoza submitted a business plan. (Doc. 50).

Shortly after the initial site visit Mendoza retained an air conditioning contractor, a refrigeration contractor, an electrician, a builder, and an architect to inspect the premises. (Doc. 50). Mendoza had discussed the need for repairs with Meredith during their June 27, 1997 site visit. (Doc. 50).

CAP accepted the written Purchase Agreement and one page Addendum on July 9, 1997. The Agreement provided in relevant part:

This sale is conditioned upon the ability of purchaser to borrow, upon this property, as security the sum of $700,000.00 by a mortgage loan ... Should purchaser, seller, or agent be unable to obtain the loan stipulated within 15 days from acceptance hereof, this contract shall then be null and void and the agent is

hereby authorized to return the purchaser's deposit in full. Commitment by lender to make loan, subject to approval of title shall constitute obtaining of loan. Purchaser obligates himself to make a good faith application for required loan(s) within 10 days of acceptance. (Docs.50, 54)

At the time the parties executed the Agreement Meredith knew Mendoza did not have final loan approval. (Meredith depo. p. 58). After the fifteen day financing period expired Meredith, at plaintiff's request, contacted Mendoza regarding the financing status and was advised that everything "was in good shape" but was not advised of final loan approval. (Doc. 50). Neither plaintiff nor Meredith took steps to arrange financing. (Doc. 50).

Shortly before the scheduled closing date, Mendoza's bankers informed him that the loan committee could not review the loan package before the closing date and advised him that an extension would be necessary. (Doc. 50). CAP also needed an extension to complete parish taxes determination. (Doc. 50). The parties agreed to an August 29, 1997 closing date; however, that date had to be extended because the loan committee had yet to review or approve Mendoza's loan. (Doc. 50).

In a special meeting on September 4, 1997, the loan committee denied defendant's financing because the bank determined he was financially over extended with an unproven ability to service the loan. (Doc. 50). His bankers advised him that additional collateral would not ameliorate his application nor would a loan for only the purchase price have been approved. (Doc. 50). Later that month CAP offered Mendoza "bridge financing" which he rejected. (Doc. 50).

The rules of contract interpretation govern this Court's analysis of the Agreement. The Louisiana First Circuit Court of Appeals in *Hampton v. Hampton, Inc.*, 713 So.2d 1185, 1188–90(La.App. 1 Cir.1998), thoroughly explained Louisiana's law of contract interpretation:

Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences

When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit.

In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement.

When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. A doubtful provision must be interpreted in light of

the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties.

Whether a contract is ambiguous or not is a question of law. (citations omitted.)

■ Reading the clear and unambiguous language of the contract, Mendoza or CAP was obligated to secure financing within the 15 day period following CAP's accepting Mendoza's offer. Clearly neither party secured the loan within that 15 day period or thereafter. Though the parties may have intended something other than what was written, that intent was not what was memorialized in the signed document and subsequent amendments. Both amendments, while changing the closing dates and cost burdens, noted that the Agreement remained in full force and effect in all other respects. Even if there was some doubt as to what the parties intended, "a provision in a contract must be interpreted against the party who furnished its text (the Agreement is on Stirling Properties letterhead) and/or against the obligee (CAP) and in favor of the obligor (Mendoza) of a particular obligation." La. Civ.C. arts.2056 and 2057. Both Mendoza and the Bank considered Mendoza's June 30th request for a loan application. Therefore, Mendoza complied with the Agreement by making a good faith application for the funds to purchase the property within (and actually before) the date of acceptance.

As noted above, a contract subject to a suspensive condition, meaning a stipulation in a contract to sell that makes a sale conditioned upon a purchaser's ability to obtain a stipulated loan to finance the purchase, imposes a duty on the purchaser to make a good faith effort to obtain a loan. *Woods v. Austin,* 347 So.2d 897, 899 (La. App. 3 Cir.1977). Whether a purchaser acted in good faith is a question of fact and circumstances. *Id.* "If the purchaser, through no fault of his own, is unable to obtain the loan, he is released from his obligation to purchase and is entitled to

the return of his deposit." *Id., citing,* [ (*Treadaway v. Piazza,* 156 So.2d 328 (La. App. 4 Cir.1963); *Liuzza v. Panzer,* 333 So.2d 689 (La.App. 4th Cir.1976); *Morrison v. Mioton,* 163 La. 1065, 113 So. 456 (1927)).]

CAP argues that because the loan was for greater than the purchase price that Mendoza was not in good faith, and thus, in violation of the entire agreement. CAP claims it would never have agreed to the sale had he known Mendoza would apply for an more than the $700,000.00. According to plaintiff, any purchaser could sabotage a purchase agreement by simply requesting an exorbitant amount of money rather than the price listed in the Agreement. While the Court agrees with CAP that many agreements could be sabotaged by a purchaser who applies for a larger-than-necessary loan, such is not the case here.

Recently, in *Natali v. Froeba,* the Louisiana Third Circuit Court of Appeal reviewed a case under similar, but factually distinct, circumstances. 735 So.2d 30 (La. App. 3 Cir.1999). In the Natali case the defendants agreed to buy and the plaintiffs to sell a 236 acre tract of land in Calcasieu Parish. *Id.* at *1. In late April and early May 1996, the parties signed a purchase agreement noting that the sale was contingent on (1) financing and (2) examination of the utility right of way. *Id.* at appendix. In September 1996, Mr. Froeba wrote to the Natali's realtor stating that the Purchase Agreement was null and void "based on both contingencies stated therein" and asked that his deposit be returned. *Id.* at *2. Subsequently in October 1998, the Natali's filed suit for specific performance or damages with the Froebas reconvening asking for return of their deposit. *Id.* at *3. The trial court dismissed both the main and reconventional demands reasoning the contract to be unenforceable. *Id.* The Natali's appealed.

In ruling for the plaintiffs, Chief Judge Doucet noted that the financing condition had not been met because the defendants

did not apply for financing until after the plaintiffs filed their suit for specific performance, over two years after the parties signed the purchase agreement. *Id.* at *7. He further noted that when Mr. Froeba finally applied for the loan it was in an amount greater that needed to buy the property. *Id.* Judge Doucet wrote, "[i]n light of the evidence, it does not appear that the Defendants made an appropriate good faith effort to obtain the financing necessary to buy the property." *Id.*

Unlike the case above, in light of the evidence and the circumstances surrounding this deal, it is abundantly clear that Mendoza made an appropriate good faith effort to secure financing. Within days of first looking at the property Mendoza applied for a loan with the bank with which he had done business and which indicated it wanted to continue to do business with him. (Mendoza depo. p. 21). He remained in constant contact with the realtor and was one of the best customers Meredith had ever dealt with. (Meredith depo. pp. 66—67). Mendoza sent an architect and builder to the site to determine renovation need. (Mendoza depo. p. 19). Further, Mendoza, who spent over $15,000.00 towards closing this deal (Mendoza depo. p. 79), had never been denied a loan before (Mendoza depo. p. 19), leading this Court to believe it is unlikely that he would purposely sabotage an excellent business record to apply for a loan he did not intend to get. Such actions demonstrate a genuine desire to develop the property into a viable commercial entity and just do not comport with plaintiff's allegations of bad faith.

CAP further argues that defendant demonstrates his lack of good faith by not looking to other banks for financing or accepting plaintiff's offer for bridge financing. Again, Mendoza sought a loan from the bank with which he had a working business relationship; it is entirely reasonable for him to decide that if a bank he had been doing business with wouldn't finance his venture then another bank could turn him down as well. (Mendoza depo. p. 81).

CAP argues that the question of defendant's good faith is a material fact for which summary judgment cannot be granted. However, this Court has reviewed the depositions and affidavits of all parties to this Agreement and finds that the record taken as a whole could not lead this Court to find for CAP as to that issue. Defendant met his burden by demonstrating that he acted in good faith in applying for the loan to purchase the Bowling Green property. In turn Plaintiff has not set forth specific facts showing a need for a genuine issue for trial as to Mendoza's good faith. Reading the Agreement and amendments as written, the contract was null and void from the expiration of the 15 day period. Although the parties amended the contract to extend the date of closing, no language was included waiving or addressing the suspensive condition. The amendments specifically noted that the Agreement remained in full force and effect outside the listed changes. Considering such, there is no genuine issue for trial with regard to the viability of the Agreement and summary judgment declaring the Agreement null and void is appropriate.

However, there remains the issue of CAP's detrimental reliance on Mendoza's representations. The First Supplemental and Amended Complaint states that, "CAPS [sic] entered into the Agreement in reliance upon the misrepresentations made by Mendoza that he had pre-approved financing for the purchase of the property." (Doc. 45). "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La.Civ.C. art.1967.

Although there is no question as to Mendoza's good faith and honest belief there would be no problem in securing the necessary financing, there is a question as to whether CAP failed to assist in securing financing during the suspensive condition period based on Mendoza's representa-

tions. This Court finds that the record firmly establishes such a reliance.

Prior to the execution of the Agreement, Mendoza tried to establish his credibility and ability to get the loan to Meredith and CAP. (Meredith depo. p. 49). Defendant discussed his prior business deals, projects underway, and "even faxed an article in the newspaper ... about the development ... in Chalmette." (Meredith depo. p. 49). He indicated money was not a problem, that "his bank wanted all of his business [and] went to great lengths to demonstrate his capacity to close on this property." (Meredith depo. p. 50).

In fact, Mendoza actually believed he could obtain the financing because he understood that he had been told that First National would loan him the money needed to get the project done. (Mendoza depo. p. 26); (Meredith depo. p. 70). However, the banker's authority changed when Whitney took over First National and the rules were changed in the middle of the game. (Mendoza depo. p. 26, 48, 62). Mendoza steadfastly and honestly represented that he would obtain the financing for the deal. However, and to its detriment, CAP relied on those representations. Considering such, plaintiff is entitled to damages. *See generally, Woodard v. Felts,* 573 So.2d 1312 (La.App. 2 Cir.1991)(Forester was allowed to recover damages under theory of detrimental reliance when both parties were in good faith, though acted inconsistently with completed contract); *McKee v. Southfield School,* 613 So.2d 659 (La.App. 2 Cir.1993)(though tuition arrearages due, student entitled to recover transcript from school on theory of detrimental reliance).

The Court may grant either specific performance or damages. The property has already been sold so that damages are the only appropriate remedy available to CAP. Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived. La.Civ.C. art.1995. However, a court need not award both, but may limit recovery to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. La.Civ.C. art.1967 comment (e).

The property was to be purchased by Mendoza for $700,000 and subsequently sold for $690,000. Thus, it would be appropriate for CAP to keep the $10,000 deposit which reflects the difference in the Agreement's purchase price and the price which was actually paid for the property.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) be, and the same is hereby **DENIED.**

**IT IS ORDERED** that Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) be, and the same is hereby **DENIED.**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) be, and the same is hereby **GRANTED IN PART** and **DENIED IN PART.**