REVISED, February 27, 1998

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-20294
_____

ST. PAUL REINSURANCE COMPANY, LTD.,

Plaintiff-Appellant,

versus

LARRY GREENBERG,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

February 10, 1998

Before DAVIS, WIENER and PARKER, Circuit Judges.

WIENER, Circuit Judge:

In this declaratory judgment action, Plaintiff-Appellant St. Paul Reinsurance Company, Ltd. (St. Paul) appeals the district court's grant of Defendant-Appellee Larry Greenberg's motion to dismiss for lack of subject matter jurisdiction, finding that St. Paul's complaint failed to satisfy the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. After reviewing the record and the arguments of counsel, and applying the applicable law, we conclude that the district court erred in dismissing the action. Accordingly, we reverse and remand.

I.

FACTS AND PROCEEDINGS

In August 1995, Greenberg purchased a homeowner's policy from St. Paul.  In March 1996, the home covered by that policy was destroyed by arson.  After Greenberg filed a sworn proof of loss in July 1996 in the amount of $35,000 —— the policy's limits of coverage —— St. Paul denied coverage.  It asserted, <u>inter</u> <u>alia</u>, that (1) Greenberg had increased the risk of hazard, (2) the property was vacant for more than thirty days prior to the fire, and (3) Greenberg had misrepresented material facts concerning the property.

On September 20, 1996, Greenberg's counsel wrote to St. Paul demanding that it acknowledge coverage under the policy within ten days or Greenberg would file suit seeking "all damages available to him under the various common laws or statutes relative to this case."  On October 10, 1996, Greenberg's attorney wrote again, demanding coverage and stating, "Obviously, if we file suit, we will seek additional damages including any penalties and interest to which Mr. Greenberg may be entitled."

A week later St. Paul filed a complaint for declaratory relief in federal district court.  St. Paul pleaded the following facts in its complaint:

1.01 Plaintiff, St. Paul Reinsurance Company, Ltd., is a foreign corporation, incorporated and having its principal place of business in London, England.

1.02 Defendant, Larry Greenberg, is a citizen of Texas.

2.01 The jurisdiction of this Court is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  This is a

2

civil action in which the matter in controversy exceeds the sum of $50,000.00, exclusive of interest and costs.

In response, Greenberg filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, arguing that he was seeking only $45,500 in the aggregate, comprising the $35,000 policy limits and attorney's fees not to exceed $10,500,[1] so that St. Paul's claim did not meet the amount in controversy requirement of § 1332.[2] Included with Greenberg's Rule 12(b) motion was his counterclaim for that amount. While Greenberg's motion to dismiss was pending in federal court, he filed a petition in state court requesting the $35,000 limits of the policy plus $10,500 in attorney's fees and alleging that St. Paul violated the Texas Deceptive Trade Practices Act (DTPA)[3] and the Texas Insurance Code.

The district court granted Greenberg's motion, dismissing St. Paul's complaint for declaratory relief. In its order, the court explained:

> The plaintiff cannot bring a suit for declaratory relief on a claim that does not exceed $50,000 and create federal jurisdiction by stating all of the possible claims for relief that a defendant may bring. There is nothing in the plaintiff's counterclaim that suggests

---

[1] Attorney's fees for a valid claim for breach of an insurance contract are recoverable pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). In addition, Tex. Ins. Code Ann. art. 21.21 § 16(b)(1) (West Supp. 1997), Tex. Ins. Code Ann. art. 21.55 § (6) (West Supp. 1997), and Tex. Bus. & Com. Code Ann. § 17.50(d) (West Supp. 1997) allow a plaintiff prevailing in an action brought under any of those statutes to recover attorney's fees and costs.

[2] At the time this action was filed, the amount in controversy for diversity jurisdiction had to exceed $50,000, exclusive of costs and interest.

[3] Tex. Bus. & Com. Code Ann. §§ 17.41 to 17.63 (West 1987).

3

that the defendant's claim will exceed $50,000.

After the court denied St. Paul's motions for reconsideration, rehearing, or, in the alternative, a new trial, St. Paul timely appealed.

## II.

## DISCUSSION

A.   Standard of Review

We review dismissals for lack of subject matter jurisdiction <u>de</u> <u>novo</u>, applying the same standard as that applied by the district court.[4]

B.   Applicable Law

"The amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the

---

[4]<u>International Paper Co. v. Denkmann Assocs.</u>, 116 F.3d 134, 136 n.4 (5th Cir. 1997).  Both parties to this appeal urge that we should review the trial court's determination of the amount in controversy for an abuse of discretion, citing <u>Dassinger v. South Central Bell Telephone Co.</u>, 505 F.2d 672 (5th Cir. 1974).  In <u>Dassinger</u>, we cited <u>Gibbs v. Buck</u>, 307 U.S. 66, 59 S. Ct. 725, 83 L. Ed. 1111 (1939), for the proposition that "discretion is vested in the trial court to determine whether the claim meets the jurisdictional amount."  <u>Id.</u> at 673.  Our understanding of <u>Gibbs</u> is that the trial court has discretion in the procedure it uses for determining the jurisdictional amount when the statute is silent. We need not and therefore do not resolve this apparent inconsistency, however; given the district court's erroneous view of the law regarding the inclusion of statutory penalties in the calculation of the amount in controversy, <u>see</u> <u>infra</u>, we would reverse even under the more deferential abuse of discretion standard.  "A court abuses its discretion when its ruling is based on an erroneous view of the law."  <u>Chaves v. M/V Medina Star</u>, 47 F.3d 153, 156 (5th Cir. 1995) (citing <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461, 110 L. Ed. 2d 359 (1990)).

extent of the injury to be prevented."[5]  When an insurer seeks a declaratory judgment regarding the coverage provided by an insurance policy, "the 'object of the litigation' is the policy and the 'value of the right to be protected' is plaintiff's potential liability under that policy."[6]  Thus, in addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are <u>inter</u> <u>alia</u> penalties, statutory damages, and punitive damages — just not interest or costs.[7]  In this case, St. Paul contends that we should include the penalties and treble damages available under the DTPA and the Texas Insurance Code in determining the amount in controversy.

The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it.[8]  It has

[5]<u>Leininger v. Leininger</u>, 705 F.2d 727, 729 (5th Cir. 1983). <u>See</u> <u>also</u> <u>Allstate Ins. Co. v. Hilbun</u>, 692 F. Supp. 698, 700 (S.D. Miss. 1988) ("In actions for declaratory or injunctive relief, the amount in controversy is measured by the value of the object of the litigation.").

[6]<u>Hilbun</u>, 692 F. Supp. at 700 (quoting <u>Leininger</u>, 705 F.2d at 729).  <u>See, e.g.</u>, <u>Stonewall Ins. Co. v. Lopez</u>, 544 F.2d 198, 199 (5th Cir. 1976) (holding that amount in controversy exceeded the requisite $10,000, as the plaintiff insurer would be required to provide a defense to its insured in a pending state court action if the court found that the policy provided coverage).

[7]<u>See</u> <u>Foret v. Southern Farm Bureau Life Ins. Co.</u>, 918 F.2d 534, 536 (5th Cir. 1990) ("[A]ttorney's fees may be included in determining the jurisdictional amount."); <u>Hilbun</u>, 692 F. Supp. at 700 ("Punitive damages can be included to reach the amount in controversy requirement if, under the governing law of the suit, they are recoverable.") (citing <u>Bell v. Preferred Life Assurance Soc'y</u>, 320 U.S. 238, 64 S. Ct. 5, 88 L. Ed 15 (1943)).

[8]<u>Gaitor v. Peninsular & Occidental Steamship Co.</u>, 287 F.2d 252, 253-54 (5th Cir. 1961).

long been recognized that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."[9]  To justify dismissal, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."[10]  We have previously indicated, however, that this "legal certainty" test has limited utility — in fact is inapplicable — when the plaintiff has alleged an indeterminate amount of damages.[11]  Furthermore, "bare allegations [of jurisdictional facts] have been held insufficient to invest a federal court with jurisdiction."[12]

Although most of our caselaw regarding § 1332's amount in controversy requirement has arisen in the context of removal from state to federal court, we find the procedures developed in those cases to be instructive in the converse context of declaratory judgment actions such as the one now before us.  In removal practice, when a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy

---

[9]St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938); De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir.), cert. denied, 116 S. Ct. 180, 133 L. Ed. 2d 119 (1995).

[10]St. Paul Mercury, 303 U.S. at 289, 58 S. Ct. at 590.

[11]De Aguilar, 47 F.3d at 1409.

[12]Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colombia v. Dow Quimica de Colombia S.A., 988 F.2d 559, 566 (5th Cir. 1993), cert. denied, 570 U.S. 1041, 114 S. Ct. 685, 126 L. Ed. 2d 653 (1994) (discussing a removal petition which "merely states, without any elaboration, that 'the matter in controversy exceeds $50,000 . . . .'").

6

exceeds the jurisdictional amount.[13] The district court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount.[14] If it is not thus apparent, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy.[15] Importantly, the jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached.[16]

Applying this test solely to the facts pleaded by St. Paul in its complaint for declaratory relief, we cannot conclude that the amount in controversy will likely exceed $50,000. St. Paul sets out its reasons for denying coverage under the policy, but asserts neither that Greenberg has expressly threatened to seek statutory penalties or punitive damages nor that St. Paul has acted with bad faith or intent. Similarly, St. Paul's complaint contains no prayer for a declaration of nonliability under the DTPA or the Texas Insurance Code. Conclusional allegations are insufficient to establish jurisdiction.[17]

This is not the end of our inquiry, however. In addition to

---

[13]Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995). The test is whether it is more likely than not that the amount of the claim will exceed $50,000. Id. at 1336.

[14]Id. at 1335.

[15]Id. at 1336.

[16]St. Paul Mercury, 303 U.S. at 292, 58 S. Ct. at 592; Seafoam, Inc. v. Barrier Sys., Inc., 830 F.2d 62, 66 (5th Cir. 1987).

[17]Allen, 63 F.3d at 1335.

the complaint itself, we must look as well to other evidence relevant at the time St. Paul filed its complaint for declaratory relief.

The district court based its determination of the amount in controversy on Greenberg's counterclaim, in which he sought only the $35,000 policy limits and attorney's fees not to exceed $10,500. But this was error as a matter of law, given that neither this counterclaim nor Greenberg's state court petition were filed until after the filing of St. Paul's declaratory judgment complaint.[18] Thus, neither of these pleadings may be considered in testing the amount here in controversy.

The only pre-complaint evidence of Greenberg's potential claim against St. Paul are the letters from Greenberg's attorney, demanding coverage under the policy and threatening to seek "all damages available to [Greenberg] under the various common laws or

---

[18]We have considered a post-removal affidavit when the jurisdictional amount was ambiguous on the face of the state petition. See Asociacion Nacional de Pescadores, 988 F.2d at 565. In doing so, however, we explained that the affidavit helped clarify the jurisdictional facts "as of the time of removal." Id. (emphasis added). We have nevertheless remained vigilant to the potential for manipulation by the plaintiff who prays for damages below the jurisdictional amount even though he knows that his claim is actually worth more. This is one reason why we have held that if a state court defendant can show that the amount in controversy actually exceeds the jurisdictional amount, then the state court plaintiff who is seeking to prevent removal must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in his state court complaint. DeAquilar, 47 F.3d at 1411. It would avail Greenberg nothing to argue that his counterclaim or subsequent state petition would merely clarify ambiguity regarding the amount in controversy, because — at least in Texas — "litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints." Id. at 1412. (citation omitted). No such binding stipulation or affidavit was filed by Greenberg.

statutes relative to this case"[19] and "any penalties and interest to which Mr. Greenberg may be entitled."[20]  One such penalty is found in § 6 of Article 21.55 of the Texas Insurance Code, which provides for statutory "damages" in the amount of "18 percent per annum" for failure timely to pay an insurance claim.[21]  The district court and Greenberg summarily concluded that "a statutory penalty that requires no adjudication cannot be used to establish threshold jurisdiction."  But this is simply an incorrect statement of the law in this circuit.  Although not cited by either party or the district court, this issue is controlled by our decision in <u>Buras v. Birmingham Fire Insurance Co. of Pennsylvania</u>.[22]

In <u>Buras</u>, we considered whether a "penalty" of six percent per annum mandated under a Louisiana statute for the unjustified

---

[19]Letter from Jim Alan Adams, counsel for Greenberg, to Peter B. Thompson, Independent Surplus Underwriters, Inc., of September 20, 1996 (emphasis added).

[20]Letter from Adams to Edward Chatelain III, counsel for St. Paul, of October 10, 1996 (emphasis added).

[21]Section 6, entitled "Damages," provides:

In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy . . . , in addition to the amount of the claim, 18 percent per annum of the amount of such claim, as <u>damages</u>, together with reasonable attorney fees.

Tex. Ins. Code Ann. art 21.55 § 6 (West Supp. 1997)(emphasis added).  As long as the insurer is found to be liable under the policy, this fee attaches, even if the insurer had a reasonable basis for denying coverage.  <u>Higginbotham v. State Farm Mut. Auto. Ins. Co.</u>, 103 F.3d 456, 461 (5th Cir. 1997).

[22]327 F.2d 238 (5th Cir. 1964).

failure to pay a life insurance claim timely should be included in the jurisdictional amount.  Noting that the exaction was not due at all if the claim settled within sixty days, we held that the charge was "intended to be in the nature of a coercive penalty towards prompt settlement" as opposed to interest.[23]  As such, the penalty could serve to establish jurisdiction.

We discern no distinguishing characteristics between the penalty assessed under the Louisiana statute analyzed in Buras and the damages provided in § 6 of Article 21.55 of the Texas Insurance Code.  The latter impost is labeled "damages" in the statute and applies over and above any other recovery.  Moreover, the Texas statute specifically states that its purpose is "to obtain prompt payment of claims made pursuant to policies of insurance."[24]  We also find persuasive the fact that on no less than two occasions the Texas Supreme Court has referred to § 6 of Article 21.55 as a "penalty."[25]  And, like the Louisiana provision examined in Buras, the Texas penalty applies automatically if the claim is not paid within the period allowed.  Therefore, according to Buras — and the inability of one panel of this court to overrule another — we hold that here the statutory damages under Article 21.55 of the Texas Insurance Code must be included in calculating the amount in controversy for § 1332.  Despite being described in terms of a per

---

[23]Id. at 238–39.

[24]Tex. Ins. Code Ann. art. 21.55 § 8 (West Supp. 1997).

[25]See Maryland Ins. Co. v. Head Indus. Coatings and Servs., Inc., 938 S.W.2d 27, 28 (Tex. 1996); State Farm Fire and Cas. Co. v. Gandy, 925 S.W.2d 696, 714 (Tex. 1996).

10

annum percentage for purposes of calculation, the statutory exaction here is not "interest" within the contemplation of § 1332; it clearly is an element of damages.  Indeed, if Greenberg is successful in recovering under the St. Paul policy, he will automatically recover 18 percent per annum damages.

Compared to the highly conjectural element of punitive damages, late settlement damages under the Texas Insurance Code, with no exception for excusable neglect or justifiable delay, is a lay down hand.  It would be ludicrous, then, to include something as speculative as punitive damages —— which all agree is properly includible —— while excluding the automatic penalty provided in the insurance code.  Given the policy's limits of $35,000, attorney's fees, and the 18 percent per annum statutory damages which have been accruing ever since March 12, 1996, we conclude that Greenberg's claim —— and St. Paul's potential liability under the policy —— would likely exceed $50,000, exclusive of costs and interest.

III.

CONCLUSION

Based on our <u>de novo</u> review of the record and applicable law, we must conclude that the district court erred in dismissing St. Paul's complaint for declaratory relief for lack of subject matter jurisdiction.  This error resulted from failure to include in the court's calculation the statutory damages of 18 percent per annum under the Texas Insurance Code.  Consequently, the judgment of dismissal by the district court is reversed and this action is

11

remanded for further proceedings in that court.

REVERSED and REMANDED.