**ABS INSURANCE, LTD.,
et al., Plaintiffs,**

v.

**NATIONAL UNION FIRE INSURANCE
COMPANY, Insurance Company of
the State of Pennsylvania, and AIG
Risk Managers, Inc., Defendants.**

United States District Court,
E.D. Texas,
Marshall Division.

June 21, 1999.

Werner A. Powers, Hughes & Luce, Dallas, TX, for plaintiffs.

John L. Ross, Harrison Henry Yoss, Thompson, Coe, Cousins & Irons, Dallas, TX, for defendants.

## ORDER DENYING MOTION
## TO REMAND

HEARTFIELD, District Judge.

Before this Court is *Plaintiff's Motion to Remand and for Relief from Pretrial*

*Disclosure Requirements* [4]. Having considered the motion, the response, the reply to the response, the surreply, and the arguments of counsel, this Court DENIES *Plaintiff's Motion to Remand and for Relief from Pretrial Disclosure Requirements* [4].

### 1. Procedural History

■ On January 22, 1997 Plaintiff ABS Insurance, Ltd., a Cayman Islands reinsurance company, and several of its stockholders (collectively referred to as "ABS") sued Defendants National Union Fire Insurance Company, Insurance Company of the State of Pennsylvania, and AIG Risk Managers, Inc. (collectively referred to as "AIG") in the 71st District Court, Harrison County, Texas (state Cause No. 97–0074) (the "Texas state-court lawsuit"). This Texas state-court lawsuit was not served upon AIG until March 18, 1999. However, one day before being served with the already filed Texas state-court lawsuit, AIG sued ABS in the United States District Court for the Southern District of New York (the "New York federal-court lawsuit"). It appears that both of these lawsuits between ABS and AIG may concern the same reinsurance agreement entered into by the parties.[1] Nevertheless, on April 7, 1999, AIG removed the Texas state-court lawsuit to this federal court alleging diversity of citizenship and an amount in controversy exceeding seventy-five thousand dollars ($75,000.00) under Title 28 U.S.C. §§ 1441(a) and 1332(a). What's the problem? ABS' Texas state-court petition did *not* state an amount of damages they were seeking. Thus, ABS filed its *Motion to Remand and for Relief from Pretrial Disclosure Requirements* [4] wherein it argues its un-stated damages are *less* than seventy-five thousand dollars

($75,000.00), thereby placing this case in state court—not federal court. AIG argues the reverse. AIG argues that ABS' unstated damages are *greater* than seventy-five thousand dollars ($75,000.00), thereby placing this case in federal court—not state court. ABS is wrong and AIG is right. This case belongs in federal court.

### 2. Facts

Under a captive insurance program established by ABS's parent, Allied Building Stores, Inc., ABS procured general liability, auto liability, and workers' compensation insurance coverage from AIG. Under a reinsurance agreement between ABS and AIG, ABS reinsured the first two hundred fifty thousand dollars ($250,000.00) per occurrence per line of business sustained under the various policies issued by AIG to ABS. ABS posted security for its potential reinsurance obligations. Specifically, ABS posted irrevocable letters of credit for AIG's benefit. AIG had the right to draw down on these letters of credit to obtain reimbursement for losses within the two hundred fifty thousand dollar ($250,000.00) amount reinsured by ABS for losses which AIG paid but ABS refused to reimburse. ABS alleges that certain claims were settled by AIG for amounts far in excess of their true value and the values assigned to such claims by AIG's third-party administrator, Alexsis, Inc.

ABS argues that, as a result of the alleged overpayment of these claims by AIG, ABS' historical loss experience was adversely affected. This historical loss experience is a factor used to calculate the reinsurance premiums that it paid to reinsure ABS' two hundred fifty thousand dollar ($250,000.00) liability under the insur-

---

1. Defendant AIG notes that the Texas state-court lawsuit was not served on AIG until March 18, 1999, one day *after* AIG was forced to file suit against ABS in federal district court in New York for the reinsurer's failure to honor its contractual obligations. *See Defendants' Brief in Opposition to Motion to Remand* [7] 1 (Defendant AIG's emphasis). The fact that AIG was *served* one day after it

filed its lawsuit does not prevent the Texas state-court lawsuit, and, consequently, this lawsuit, from being the *first-filed* lawsuit. In short, this is the first-filed lawsuit. Should there be substantial overlap between this Texas lawsuit and the New York lawsuit, this timing may become important. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir.1999).

ance program ABS bought on behalf of its stockholders. Thus, ABS alleges that because these claims were over-payed, it has been, and will continue to be, forced to pay substantially greater premiums to reinsure the two hundred fifty thousand dollar ($250,000.00) per occurrence obligation under the insurance program. Further, ABS alleges that its increased reinsurance premiums have resulted, and will continue to result, in substantial damages to its stockholders in the form of decreased profits available to pay dividends. Moreover, ABS alleges that AIG's overpayment of claims has resulted in further damages to its stockholders in the form of increases in premiums that the policyholders paid to procure workers' compensation insurance, general liability insurance, or both.

In its *Plaintiffs' Original Petition* ABS *does not* state any specific amount of damages sought. However, ABS *does* seek (in an unspecified amount): recovery of actual damages constituting past and future decreased profits and past and future increases in premiums that ABS has paid and will pay to procure insurance, statutory double damages under Texas Insurance Code, Article 21.21, punitive damages, pre- and post-judgment interest, court costs, and attorneys' fees. *Plaintiffs' Original Petition*, ¶¶ 87, 88, 89, 101, 102, and 109. So, does *Plaintiffs' Original Petition* plead an amount in excess of the jurisdictional limits of this Court (seventy-five thousand dollars ($75,000.00)) despite failing to plead a *specific* amount of damages? Yes, it does.

### 3. Law of Removal

■ Whether or not removal was proper is determined "on the basis of claims in the state court complaint as it exists at the time of removal ..." *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir.1995); *see Nolan v. Boeing*, 919 F.2d 1058, 1063 fn. 5 (5th Cir.1990) ("In removed cases, the existence of federal subject matter jurisdiction is determined at the time of removal."). This rule is, to say the least, well-grounded. In 1914, the Supreme Court wrote:

> Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). Moreover, once a defendant properly removes a case to federal court, a plaintiff may not defeat that removal by simply amending the complaint. *Cavallini, supra*, at 265 ("... [R]emoval jurisdiction should be determined on the basis of the state court complaint at the time of removal, and ... a plaintiff cannot defeat removal by amending it."); *see Robinson v. Quality Ins.*, 633 F.Supp. 572, 577 (S.D.Ala.1986) ("[A]ction by a plaintiff subsequent to removal cannot deprive this Court of jurisdiction if the removal was proper when filed."); *see also Brown v. Southwestern Bell*, 901 F.2d 1250, 1254 (5th Cir.1990); *Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95, 97 (7th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989) ("[R]emoval is not defeated by the fact that, after the case is removed, the plaintiff files a new complaint, deleting the federal claim or stating a claim that is not removable."); *see also Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 989 (5th Cir.1988) ("The assertion of a claim under a federal statute alone is sufficient to empower the District Court to assume jurisdiction over the case ...") (internal quotation omitted) (footnote citations omitted), quoted in *Cervantez v. Bexar County Civil Service Comm'n*, 99 F.3d 730, 733 (5th Cir.1996).

■ So, this Court must look to ABS' *Plaintiffs' Original Petition* as it existed *at the time of removal* in order to determine whether AIG's removal was proper.

But how does this Court figure out whether ABS' complaint alleges damages sufficient to confer jurisdiction upon this Court? The Fifth Circuit:

> In removal practice, when a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. The district court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount. If it is not apparent, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy. Importantly, the jurisdictional facts must be judged as of the time the complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached.

*St. Paul Reinsurance Co., Ltd. v. Greenberg,* 134 F.3d 1250, 1253–54 (5th Cir.1998) (citing *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995)) (footnotes omitted); *see De Aguilar v. Boeing, Co.,* 47 F.3d 1404, 1411 (5th Cir.1995); *Cross v. Bell Helmets, U.S.A.,* 927 F.Supp. 209, 213 (E.D.Tex.1996); *HWJ v. Burlington Insurance Co.,* 926 F.Supp. 593 (E.D.Tex. 1996); *Carnahan v. Southern Pacific Railroad Trans. Co.,* 914 F.Supp. 1430 (E.D.Tex.1995).[2] So, it's a two-step test. First, if it is "facially apparent" from the state court petition *as it existed at the time of removal* that the amount in controversy exceeds seventy-five thousand dol-

lars ($75,000.00), the Defendant need only point this out to bear its burden for proper removal. But, if jurisdiction is not "facially apparent" from the state court petition *as it existed at the time of removal,* the Defendant must prove by a "preponderance of the evidence" the jurisdictional facts in question. *De Aguilar,* 11 F.3d at 58. Here, it is not facially apparent from *Plaintiff's Original Petition* that the amount in controversy exceeds seventy-five thousand dollars ($75,000.00). However, AIG has successfully demonstrated that the preponderance of the evidence indicates that this jurisdictional amount has been crossed.

### 4. Analysis

First, ABS argues, and this Court concedes, that sixty-four (64) of the seventy-three (73) plaintiffs non-suited their claims on April 5, 1999—*before AIG removed this case to this Court.* Thus, on April 7, 1999, the day AIG removed this lawsuit to this court, only nine (9) plaintiffs remained. Nevertheless, ABS' broad claims persist. Damages sought include:

1) recovery of actual damages constituting past and future decreased profits and past and future increases in premiums that ABS has paid and will pay to procure insurance;[3]

2) statutory double damages under Texas Insurance Code, Article 21.21;

3) punitive damages;

4) attorneys' fees.[4]

---

2. Most of these cases arose prior to January 17, 1997. On this date, Congress amended Title 28 U.S.C. § 1332 and *raised* the federal jurisdictional amount from fifty thousand dollars ($50,000.00) to seventy-five thousand dollars ($75,000.00). Regardless, the jurisdictional analysis remains the same.

3. Indeed, in its *Plaintiffs' Original Petition* ABS alleges: "AIG settled claims on behalf of ABS in amounts *far in excess* of their true value and for amounts far in excess of the values assigned to such claims ..." *Plaintiffs' Original Petition* ¶ 86 (emphasis added). That, as a result of AIG's alleged overpayment of claims, ABS has been "forced to pay *sub-*

*stantially greater* premiums" for reinsurance of its per loss obligation under the Program. *Plaintiffs' Original Petition* ¶ 87 (emphasis added). And, finally, that these increased reinsurance premiums have resulted in *"substantial damages* to ABS' stockholders in the form of decreased profits." *Plaintiffs' Original Petition* ¶ 88 (emphasis added).

4. For some reason, AIG invites this Court to consider pre- and post-judgment interest and court costs in making its jurisdictional calculation. This would be clear error. Title 28 U.S.C. § 1332 reads, in part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy

*See Plaintiffs' Original Petition,* ¶¶ 87, 88, 89, 101, 102, and 109. ABS argues that all of this is below seventy-five thousand dollars ($75,000.00).

First, AIG argues "[w]hen a group of plaintiffs brings a claim alleging punitive damages, the court ***must*** aggregate the punitive damages claims to determine whether the amount in controversy exceeds $75,000." *Defendants' Brief in Opposition to Motion to Remand* [7] 7–8 (emphasis added). ABS disagrees. It argues "[t]he claims of multiple Plaintiffs ***may not be aggregated*** for purposes of determining whether the $75,000.00 amount in controversy requirement necessary to support diversity jurisdiction has been satisfied." *Plaintiffs' Motion to Remand* [4] 3 (emphasis added). Must aggregate—may not aggregate. What does the Supreme Court have to say about all of this?

In 1969 the Supreme Court considered "whether separate and distinct claims presented by and for various claimants in a class action may be added together to provide the $10,000 jurisdictional amount in controversy." *Snyder v. Harris,* 394 U.S. 332, 333, 89 S.Ct. 1053, 1055, 22 L.Ed.2d 319 (1969). There, the Supreme Court held that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Id.* at 335, 89 S.Ct. at 1056. Later, the Supreme Court further solidified its general rule of non-aggregation in *Zahn v. International Paper Co.* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).[5] Thus the Supreme Court respected the standard that, "as a general rule aggregation is not allowed." *Asociacion,* 988 F.2d at 563.

exceeds the sum or value of $50,000, *exclusive of interest and costs* ..." Title 28 U.S.C. § 1332 (emphasis added). Accordingly, despite AIG's invitation to commit clear error and include pre- and post-judgment interest and court costs in making its jurisdictional determination, this Court will decline this erroneous endeavor.

Of course, it is a *general* rule; as such, there is (as always) an exception. This exception is, to say the least, well settled. In 1891 the Supreme Court described the exception to the general rule of non-aggregation:

> The general principle observed in all [cited cases] is that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone.

*Clay v. Field,* 138 U.S. 464, 479, 11 S.Ct. 419, 425, 34 L.Ed. 1044, 1049 (citing *Henderson v. Wadsworth,* 115 U.S. 264, 6 S.Ct. 40, 29 L.Ed. 377 (1885); *Stewart v. Dunham,* 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329 (1885); *Hawley v. Fairbanks,* 108 U.S. 543, 2 S.Ct. 846, 27 L.Ed. 820 (1883); *Farmers' Loan & Trust Co. v. Waterman,* 106 U.S. 265, 1 S.Ct. 131, 27 L.Ed. 115 (1882); *Russell v. Stansell,* 105 U.S. 303, 26 L.Ed. 989 (1881); *Seaver v. Bigelows,* 5 Wall. 208, 18 L.Ed. 595 (1866)). In this particular case, an ownership dispute broke out over a cotton plantation after the death of one of its co-partners.[6]

5. Although the holding in *Zahn* was subsequently over-ruled by congressional amendment to Title 28 U.S.C. § 1367, the Supreme Court's solidification of the non-aggregation rule remains.

6. The co-partners were, in fact, brothers. The main dispute was over whether the surviving brother had to pay rent to his brother's heirs for staying on the plantation. Apparent-

On appeal, another dispute broke out—whether the appellate court could hear an appeal by the widower of one of the deceased partners. The Supreme Court held that the widower's claim could *not* be aggregated with her son's appeal in order to establish the jurisdictional amount for appeal; that is, the Supreme Court respected the well-settled rule of non-aggregation by refusing to aggregate individual, appellate claims for jurisdictional determination. *See also Pinel v. Pinel,* 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916).

■ So, when should a district court apply the exception to the general rule of non-aggregation? When parties join in suit with a "common and undivided interest." *Clay,* 138 U.S. at 479, 11 S.Ct. at 425. But when is that?

> The paradigm cases of 'common and undivided interest' ... are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res. This is not true of punitive damages. Individual plaintiffs can sue separately for punitive damages, and, whether they prevail on the merits or not, whether they are awarded punitive damages or not, the rights of subsequent plaintiffs remain unaffected.

*Bishop v. General Motors Corp.,* 925 F.Supp. 294, 298 (D.N.J.1996). Simply put, "aggregation is *permitted,* when the adjudication of a claim implicates the rights of all other claimants." *Peterson v. BASF Corp.,* 12 F.Supp.2d 964; 972 (D.Minn.1998). Thus, a district court *may* aggregate multiple damage claims when the adjudication of a single claim would effect the rights of all others. Such is not the case with punitive damage claims—for

an individual, punitive damage award to a single plaintiff is not a single *res* forever expended to the detriment of other, similarly situated plaintiffs seeking punitive damages, too.

Nevertheless, aggregation happens. The Honorable David Folsom of this Court: "[I]f the punitive damages are a single collective right in which the *class* has a common and undivided interest, the damages can be considered in the aggregate for purposes of meeting the requisite amount in controversy." *Corley v. Southwestern Bell Telephone Co.,* 924 F.Supp. 782 (E.D.Tex.1996) (citing *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir.1995); *In re Norplant Contraceptive Products Liability Litigation,* 907 F.Supp. 244 (E.D.Tex.1995) (emphasis added). First, this Court notes that *Corley* involved a class action. This is not a class action. Next, this Court notes that Judge Folsom said "the damages *can be* considered" in the aggregate to determine jurisdiction-they do not *have to be* considered in the aggregate in every instance.

However, the Southern District has held, quite clearly, that a district court in Texas *must* aggregate the punitive damage claims for jurisdictional determination. The Honorable Sam Kent of the Southern District:

> [T]he Court holds that when a group of plaintiffs bring a claim alleging punitive damages, a District Court in Texas *must* aggregate the punitive damage claims to determine whether the amount in controversy exceeds $75,000. Assuming complete diversity exists, if in the aggregate plaintiffs' punitive damage claims will likely exceed $75,000, the District Court may properly exercise subject matter jurisdiction.[7]

ly, prior to this particular ruling, the Civil War broke out, the slaves were freed, and the plantation greatly depreciated in value. The surviving brother remained on the plantation in an effort to salvage its value. The Supreme Court held that the surviving brother owed his brother's heirs fair rental value for the plantation and fair value for the plantation's slaves—that is, up until the slaves were freed (after which they were no longer "property"). Not some of our finer days.

*Acosta v. Amoco Oil Co.*, 978 F.Supp. 703, 707 (S.D.Tex.1997) (quoting *Allen*, 63 F.3d at 1334) (emphasis added). In reaching this holding, Judge Kent noted that "[o]ther District Courts outside of Texas but within this Circuit have found likewise." *Id.* at 706 (citing *Duhon v. Conoco*, 937 F.Supp. 1216 (W.D.La.1996); *Brooks v. Georgia Gulf Corp.*, 924 F.Supp. 739 (M.D.La.1996); *Chadwick v. Shell Oil Co.*, 828 F.Supp. 26, 28 (E.D.La.1993); *Lailhengue v. Mobil Oil Co.*, 775 F.Supp. 908, 910–914 (E.D.La.1991)). But not all Louisiana district courts agreed that multiple plaintiff punitive damage claims must be aggregated post *Allen. Harrison v. Union Carbide Corp.*, 1995 WL 731672 (E.D.La. Dec.7, 1995) (unpublished opinion); *Cooper v. Koch Pipeline*, 1995 WL 931091 (E.D.La. Dec.11, 1995) (unpublished opinion). What's going on here?

The problem is confusion among the circuits, within the circuits, and, consequently, across the board with all districts. Indeed, the Fifth Circuit recently noted "[t]wo panels in our own circuit took different approaches to deciding whether to aggregate punitive damages and reached different results." *Ard v. Transcontinental Gas Pipe Line Corp.*, 138 F.3d 596, 601 (5th Cir.1998). The two conflicting Fifth Circuit panel decisions are *Lindsey v. Alabama Telephone Co.* and *Allen v. R & H Oil & Gas Co. Lindsey v. Alabama Telephone Co.*, 576 F.2d 593 (5th Cir.1978); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir.1995). In *Lindsey*, the plaintiffs brought a class action under Alabama law against two telephone companies. While the plaintiffs each claimed two thousand dollars ($2,000.00) in compensatory damages, the class sought one million dollars ($1,000,000.00) in punitive damages.[8] First, the Fifth Circuit panel noted "[s]ignificantly, the complaint nowhere alleges the number of persons in the class, an allegation that would have permitted the court to ascertain what dollar amount represents the 'amount in controversy' for each member of the class." *Id.* at 595. "Since the status of the case as disclosed by plaintiff's complaint is controlling in the case of removal, it was not open for defendants to attempt to show that the class was small enough that the claims on its behalf exceeded the sum of $10,000 per capita." *Id.* Thus, the Fifth Circuit panel adopted the Supreme Court's analysis in *Snyder* for the proposition that punitive damage claims may not be aggregated for jurisdictional determination—that is, this Fifth Circuit panel followed the Supreme Court's well-settled rule of non-aggregation by refusing to aggregate punitive damage claims for jurisdictional determination. All was well until . . .

Enter *Allen v. R & H Oil & Gas Co.* 63 F.3d 1326 (5th Cir.1995). In *Allen*, five hundred and twelve (512) plaintiffs brought tort claims in a Mississippi state court for damages allegedly resulting from an explosion and release of toxic fumes. *Id.* As in this case, the plaintiffs sought both compensatory and punitive damages, but did not allege a specific amount. *Id.* The Fifth Circuit panel held that *Mississippi* state law required a district court to aggregate a group of plaintiffs' *Mississippi* punitive damage claims when making the jurisdictional determination. The Fifth Circuit reasoned that Mississippi punitive damages were "fundamentally collective," "not compensatory," were intended to punish, and were awarded at the judge's discretion. *Allen*, 63 F.3d at 1335.

---

**7.** This Court particularly notes that Judge Kent (like Judge Folsom) made this ruling *after* the *Allen* decision for aggregation of Mississippi punitive damage claims but *before* the *Ard* decision for non-aggregation of Louisiana punitive damage claims. *Ard v. Transcontinental Gas Pipe Line Corp.* 138 F.3d 596 (5th Cir.1998). As will be later developed, the *Ard* panel weighs heavily against the use of

*Allen* as a foundation to aggregate punitive damage claims in making a jurisdictional determination.

**8.** At the time of this case, the jurisdictional amount under Title 28 U.S.C. § 1332 was ten thousand dollars ($10,000.00).

Thus, the Fifth Circuit Panel held: "[B]ecause of the collective scope of punitive damages and their nature as individual claims under Mississippi law the amount of such an alleged award is counted against each plaintiff's required jurisdictional amount"—that is, this Fifth Circuit panel departed from the Supreme Court's well-settled rule of non-aggregation by aggregating *Mississippi* punitive damage claims for jurisdictional determination. *Id.*

On April 20, 1998, another Fifth Circuit panel addressed aggregation yet again. In *Ard v. Transcontinental Gas Pipe Line Corp.*, about three hundred fifty (350) plaintiffs filed suit against Transcontinental Pipe Line Corporation ("Transco") after one of Transco's pipelines exploded in St. Helena Parish, Louisiana. 138 F.3d 596, 599–600 (5th Cir.1998). Although each individual plaintiff filed affidavits in state court stipulating that his or her claim was below fifty thousand dollars ($50,-000.00), the jurisdictional amount of the federal court, Transco removed the case to federal court.[9] In denying the plaintiffs' motion to remand, the district court aggregated the plaintiffs' punitive damage claims and, consequently, found the federal jurisdictional amount of fifty thousand dollars ($50,000.00) had indeed been crossed.

This Fifth Circuit panel reversed the district court's denial of the motion to remand since it "disagree[d] with the district court's conclusion that Plaintiff's punitive damage claims can be aggregated for purposes of determining jurisdictional amount." *Ard,* 138 F.3d at 601. First, the Fifth Circuit noted the general rule "that ordinarily the punitive damage claims of multiple plaintiffs may not be aggregated for purposes of determining jurisdictional amount." *Id.* at 600. Then, the panel explored a variety of different circuits' positions on aggregation—the Second Circuit (no aggregation of punitive damages), the Ninth Circuit (no aggregation of attorneys

fees in a class action), and the Eleventh Circuit (aggregation of punitive damages). The Fifth Circuit panel found "[t]he circuits have not taken a consistent position on this question of whether the punitive damages claimed by multiple plaintiffs can be aggregated, and the entire amount allocated to each plaintiff, for the purpose of determining jurisdictional amount." *Id.* Finally, as already noted, this Fifth Circuit panel remarked that "[t]wo panels in our own circuit took different approaches to deciding whether to aggregate punitive damages and reached different results." *Id.* The 1978 *Lindsey* panel did *not* aggregate punitive damages claims; while the 1995 Allen panel *did* aggregate punitive damages claims.

The *Ard* panel reflected on the *Allen* panel's self-restriction:

> [t]he *Allen* panel emphasized, however, that its decision was driven by the peculiar nature of punitive damages under Mississippi state law. In response to a Petition for Rehearing En Banc, the panel stated:
>
>> the panel is of the unanimous view that the opinion in this case specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state.

*Ard,* 138 F.3d at 601. Finally, the *Ard* panel remarked:

> It is unclear to us what Mississippi law regarding punitive damages drove the Allen panel to depart from Lindsey's rule, but we find no principle in Louisiana law regarding the nature of punitive damages that permits us to depart from Lindsey. We therefore hold that in this case, the punitive damage claims of the multiple plaintiffs should not be aggregated, and once aggregated, attributed

9. The cause of action arose before the effective date of the new amount in controversy of

seventy-five thousand dollars ($75,000.00).

to each individual plaintiff for determination of jurisdictional amount.

*Id.* Accordingly, recent district court decisions (including one Louisiana district court decision) have followed *Ard* and refused to aggregate punitive damage claims for determination of jurisdictional amount. *Johnson v. Cytec Indus.*, 1999 WL 212753, *1 (E.D.La. Apr.13, 1999); *see also Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 973 (D.Minn. June 30, 1998); *Glover v. Midland Mortg. Co. of Oklahoma*, 228 B.R. 293, 298 (N.D.Ala. Dec.7, 1998). Thus, a Fifth Circuit panel (once again) adopted the Supreme Court's analysis in *Snyder* for the proposition that punitive damage claims may not be aggregated for jurisdictional determination—that is, this Fifth Circuit panel (once again) followed the Supreme Court's well-settled rule of non-aggregation by refusing to aggregate punitive damage claims for jurisdictional determination.

■ Result? Three Fifth Circuit panel decisions—two for non-aggregation and one for aggregation. The 1978 *Lindsey* panel found no aggregation of punitive damage claims in a class action context; then the 1995 *Allen* panel found aggregation of *Mississippi* punitive damage claims under *Mississippi* state law; and, finally, the 1998 *Ard* panel found no aggregation of *Louisiana* punitive damage claims under *Louisiana* state law. Against the background of this uncertainty lies one sure thing: the Supreme Court's general rule that "as a general rule aggregation is not allowed." *Asociacion*, 988 F.2d at 563. So, aggregation or no aggregation? This Court holds that, in a non-class-action context, aggregation of Texas punitive damage claims is improper for determination of jurisdictional amount. The *Allen* panel

decision was a sharp, confined departure from the Supreme Court's well-settled rule of non-aggregation. Indeed, the *Allen* panel itself "specifically noted no less than three times in its original decision that its decision was limited to Mississippi law." *See Addison v. Illinois Central Railroad Co.*, 967 F.Supp. 173, 178 (E.D.La.1997). Moreover, there are now two (2) panel, non-aggregation decisions cutting directly against the self-confined *Allen* panel for aggregation. Thus, in a non-class-action context, aggregation of Texas punitive damage claims exists no more; indeed, it should not have existed in the first place.

Aggregation aside, the cases relied upon by the Plaintiffs are simply inapposite to this particular case. In *Asociacion*, the defendant submitted a single line from its notice of removal to support jurisdiction: "the matter in controversy exceeds $50,-000 exclusive of interest and costs." [10] *Asociacion*, 988 F.2d at 566. That's it—no affidavits, no summary-judgment type evidence—nothing else. In this case and unlike the defendant in *Asociacion*, AIG has submitted summary-judgment type evidence to support federal jurisdiction.[11] Furthermore, in *Asociacion*, the "plaintiffs met Dow Chemical's removal notice with a sworn affidavit affirming that individual damages were less than $50,000 ... When specifically contested in a motion to remand, bare allegations by the removing party (much less statements in passing) have been held insufficient to invest a federal court with jurisdiction." *Id.* In this case and unlike the plaintiff in *Asociacion*, ABS has *not* submitted any affidavits or other evidence meeting AIG's notice of removal and affirming that damages are

---

**10.** Incidentally, in the *Asociacion* case relied upon by ABS, the Fifth Circuit noted, once again, that "it has frequently been held that when faced with a complaint for unspecified damages a court may look to the removal notice or petition in deciding whether the requisite amount is in controversy." *Asociacion*, 988 F.2d at 565. Later, this Court will address ABS' (incorrect) contention that

AIG's notice of removal may *not* be considered by this Court in its jurisdictional determination.

**11.** Later, this Court will quickly dispose of ABS' litany of challenges to AIG's summary-judgment type evidence.

below seventy-five thousand dollars ($75,-000.00).[12]

Other factors support federal court jurisdiction. The Fifth Circuit:

Should a defendant choose to remove a case within thirty days from its receipt of an initial pleading that does not reveal on its face that the plaintiff is seeking damages in excess of the jurisdictional minimum [as in this case], the federal court may either: (1) look to the petition for removal, (2) make an independent appraisal of the amount of the claim, or suggest that the defendant is free to do so, (3) remand the action.

*Chapman v. Powermatic*, 969 F.2d 160, 163 n. 6 (5th Cir.1992) (citing *Rollwitz v. Burlington Northern R.R.*, 507 F.Supp. 582, 585 (D.Mont.1981); *Coleman v. Southern Norfolk*, 734 F.Supp. 719 (E.D.La.1990); CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, Federal Practice and Procedure: Jurisdiction 2d § 3725 at 423, 426–27).

■ Despite this precedent, Plaintiffs argue "[b]are allegations by the removing party to the effect that a removed lawsuit exceeds the $75,000.00 amount in controversy requirement necessary to establish diversity jurisdiction are simply insufficient to invest a federal court with jurisdiction." *Plaintiff's Motion to Remand and Relief from Pretrial Disclosure Requirements* [4] 4 (citing *Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 565–66 (5th Cir.1993) and *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253–54 (5th Cir.1998). While this may be true, it has no bearing on this case. Here, ABS did not specify an amount of damages in its state-court petition. Thus,

under Fifth Circuit law, this Court may look to AIG's notice of removal—a notice which supports federal court jurisdiction—in order to assist in its jurisdictional determination. *See Chapman; Rollwitz; Coleman.*

Moreover, AIG submitted evidence that "[t]he total premium paid by plaintiffs in connection with the Program is collectively in excess of $5,500,000. In addition, the premium paid by each of the individual insureds over the course of the Program easily exceeds $75,000." *See Declaration of Michael Santangelo*. As they do for all of the other affidavits submitted by AIG in opposition to the remand motion, "Plaintiffs object to the Santangelo Declaration and the accompanying exhibit on the grounds of hearsay, lack of personal knowledge, speculation and lack of authentication/lack of foundation and request that this Court not consider same in determining the jurisdictional issue. Finally, Plaintiffs object to the Santangelo Declaration on relevancy grounds …"[13] *Plaintiffs' Reply to Defendants' Brief in Opposition to Motion to Remand and Objections to Evidence Offered in Support Thereof* 10. Well, Mr. Santangelo is the Director of the Captive Association Division for Defendant AIG Risk Management, and he declared that he has "personal knowledge of the facts set forth below," including the amount of the total premium and the premiums paid by individual insureds over the course of the Program. *See Declaration of Michael Santangelo*. So this does away with the bulk of ABS' litany of objections to this evidence.

---

12. *St. Paul* is even more inapposite than *Asociacion, St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250 (5th Cir.1998). In *St. Paul*, the Fifth Circuit reversed a lower court's dismissal of an insured's declaratory judgment action for lack of subject matter jurisdiction. The Fifth Circuit based this reversal on an "error [that] resulted from failure to include in the court's calculation the statutory damages of 18 percent per annum under the Texas Insurance Code." *St. Paul*, 134 F.3d at 1255.

13. Rather than specifically rebut the Santangelo declaration, ABS simply levies a buffet of objections to its quality and competence. Since this Court refuses to swallow any of them, the Santangelo declaration—AIG's summary-judgment type evidence for jurisdiction—stands unchallenged. *See Local Rule* CV–56(c).

However, a word about the relevancy objection. Plaintiffs repeatedly argue they "are not suing for the total amount of premiums paid under the program ..." Well exactly what amount would ABS suggest this Court (or a removing defendant) use as a starting point to determine the unspecified amount of damages sought in the original petition? ABS is trying to capitalize on the state-court complaint's omission of a specific damage amount to dodge *any* sum certain surely to land it in federal court. Despite its numerous claims for damages and AIG's submitted evidence indicating a considerable amount of premiums paid under the Program, ABS simply assures this Court that its damages sought are below the jurisdictional limits of this Court. Such assurance is a mere finger in the wind; and it turns a blind eye to the Plaintiffs' sweeping claims and the Defendants' submitted evidence establishing federal court jurisdiction by a preponderance of the evidence. ABS seeks:

1) recovery of actual damages constituting past and future decreased profits and past and future increases in premiums that ABS has paid and will pay to procure insurance;

2) statutory double damages under Texas Insurance Code, Article 21.21;

3) punitive damages;

4) attorneys' fees.[14]

Considering these broad claims in conjunction with the considerable amount of payments made by ABS under the Program, the total claim for damages *sans* aggregation is more likely than not to be for seventy-five thousand dollars ($75,000.00) or more—the jurisdictional requirement for this Court.

[O]nce a defendant is able to show that the amount in controversy exceeds the jurisdictional amount, removal is proper, provided plaintiff has not shown that it is legally certain that his recovery will not exceed the amount stated

in the state complaint ... Thus, once the defendant has pointed to an adequate jurisdictional amount, the situation becomes analogous to the "typical" circumstances in which the *St. Paul Mercury* "legal certainty" test is applicable: The defendant has established, by a preponderance, that federal jurisdiction is warranted. At this point, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal ..." Plaintiff's "legal certainty" obligation might be met in various ways ... Plaintiff's state complaint might cite, for example, to a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause and that prohibits the initial *ad damnum* to be increased by amendment. Absent such a statute, "litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, *St. Paul* makes later filings irrelevant."

*De Aguilar*, 47 F.3d at 1412 (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) and *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir.1992) (per curiam)).

Here, although AIG has successfully shown that the amount in controversy exceeds the jurisdictional amount, ABS has not shown that it is legally certain that its recovery will *not* exceed the jurisdictional amount. First, ABS has not cited any state statute which would limit its recovery to below the seventy-five thousand ($75,000.00) jurisdictional amount. Moreover, ABS has failed to file any binding stipulation or affidavit stating it will not seek an amount in damages that meets or exceeds the seventy-five thousand ($75,000.00) jurisdictional amount. Thus, AIG's proper removal remains in tact.

**14.** Again, this Court refuses AIG's invitation to include interest and costs in this calcula-

tion; for it is an invitation to commit clear error.

### 5. Conclusion

While it is not facially apparent from ABS' state-court petition that its claims exceed the jurisdictional amount of this Court, or seventy-five thousand dollars ($75,000.00), this Court finds that AIG has demonstrated by a preponderance of the evidence that this jurisdictional amount has indeed been crossed. First, this Court holds that, in a non-class-action context, aggregation of Texas punitive damage claims for jurisdictional determination is improper. The *Allen* panel was a sharp, confined departure from the Supreme Court's well-settled rule of non-aggregation. Indeed, its tenuous foundation lies in a Fifth Circuit panel's self-restricted *Allen* decision departing from the general rule of non-aggregation. Although the self-restricted Allen decision permitted aggregation of *Mississippi* punitive damages claims for jurisdictional determination, it appears that litigants have begun to argue district courts **must** aggregate **all** punitive damage claims. Such reasoning permits the narrow exception to swallow the general rule of non-aggregation—something the Supreme Court never intended. Accordingly, this Court holds that, in a non-class-action context, a district court may not aggregate Texas punitive damage claims for jurisdictional determination—that is, this Court follows the Supreme Court's well-settled rule of non-aggregation by refusing to aggregate Texas punitive damage claims for jurisdictional determination in a non-class-action context. Nevertheless, in this particular case, Defendants have successfully demonstrated that Plaintiffs' claims *sans* aggregation exceed the jurisdictional amount of this Court.

Accordingly, this Court DENIES *Plaintiff's Motion to Remand and for Relief from Pretrial Disclosure Requirements* [4]. Moreover, this Court denies the joint request by the parties to forego this Court's Local Rules (specifically the "Discovery Track Three" disclosure requirements) and the disclosure requirements imposed by the Federal Rules of Civil Procedure. Upon receipt of this order, the parties shall immediately begin meeting their initial disclosure obligations.

It is SO ORDERED.