**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 01-20609

RAND MINTZER,

Plaintiff -
Counter Defendant -
Appellee,

versus

RICHARD M LESTER,
individually and doing
business as Law Offices
of Richard M. Lester,

Defendant -
Counter Claimant -
Appellant.

Appeal from the United States District Court
For the Southern District of Texas
(No. H-00-CV-4383)

October 10, 2002

Before WIENER, EMILIO M. GARZA and PARKER, Circuit Judges.

PER CURIAM[*]:

The district court entered summary judgment against Defendant-Appellant Richard M. Lester on his claim for unpaid referral fees. On appeal, we conclude that the district court

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

lacked subject matter jurisdiction and are therefore constrained to reverse and remand with instructions to dismiss.

## BACKGROUND

This is an attorney's fees dispute. Richard Lester, a California attorney, agreed to refer his Texas motorcycle accident cases to Rand Mintzer, who practices in Houston. The two memorialized their agreement by letter each time Lester referred a client. One such letter provides that they would divide the work between themselves and that any fee recovered "shall be divided on a quantum meruit basis." Each letter was the same from one to the next.

At some point Lester claimed he was due referral fees under one or more agreements that Mintzer was refusing to pay. On November 24, 1997, Mintzer initiated a declaratory judgment action in the federal district court in Galveston. Thereafter, the Unauthorized Practice of Law Committee ("UPLC") began an investigation of Lester. Relying on the pendancy of the UPLC proceeding, and concluding that "the outcome of the Committee's investigation may render this matter moot," a magistrate judge "abated" the proceeding pending further order. The judge asked that he be notified upon the completion of the UPLC's investigation. The UPLC completed its investigation in June 2000, exonerating Lester.

On April 20, 2000, more than two months before the UPLC's

-2-

investigation was officially terminated, Lester filed suit against Mintzer in Dallas County state district court. The parties proceeded with discovery in that action. On March 19, 2001, it was transferred to Harris County.

Almost two years after the instant case had been abated, and two months after the UPLC proceeding ended, Mintzer moved for this case to be reopened and simultaneously for summary judgment. Several months later, on December 4, Lester responded to the motion to reopen and additionally moved for stay, citing the pending state-court action. The district court scheduled the motion to reopen for a hearing, after which it sua sponte transferred the case to the Houston Division. In so doing, the court did not rule on any of the pending motions. Upon receipt of the case, the transferee court in Houston set it for a scheduling conference. In the court's notice it advised that it "may rule on any pending motions at the conference."

At the March 22, 2001 hearing, the district court (1) granted Mintzer's motion to reopen the case; (2) granted Mintzer's motion for summary judgment; and (3) denied Lester's motion for stay. It entered final judgment the same day. On April 4, Lester filed a motion for relief under Rules 59 and 60, cast as a "motion for reconsideration and alteration of judgment." The district court subsequently denied the motion without explanation.

Lester made a timely appeal. He argues that the district

-3-

court erred in granting summary judgment solely on the basis of Lester's failure to file a response, and that the Court abused its discretion in denying his motion for reconsideration. He also now asserts that the federal district court lacks subject matter jurisdiction.

**DISCUSSION**

In his reply brief, Lester for the first time argues that the court lacks subject matter jurisdiction. Whenever it appears that our jurisdiction is in doubt--even when the question is raised for the first time on appeal--we must satisfy ourselves of our authority to act before proceeding further. *See* 14B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3739 (3d ed. 1998). When jurisdiction is conferred on the basis of diversity of citizenship, the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). To determine whether the jurisdictional amount is met we look first to the face of plaintiff's complaint. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). If from that the amount in controversy is uncertain we can look to summary judgment-like evidence, but only to the extent such evidence sheds light on the amount in controversy at the time suit was first brought. *See id.* at 1253-54; *see also State Farm Mutual Auto. Ins. Co. v. Powell*, 87 F.3d 93, 97 (3d Cir. 1996)(holding that discovery is admissible to prove the amount in controversy). Dismissal for want of

-4-

jurisdiction is proper only if the court determines to a "legal certainty" that the jurisdictional amount is not met. *See St. Paul*, 134 F.3d at 1253.

In his complaint, Mintzer seeks a declaration that he owes Lester nothing arising from the referral agreements. "Alternatively, *if* the Court finds that Mintzer does owe fees to Defendant in quantum merit, Mintzer seeks a declaration that he be permitted to offset the amounts owed to Defendant by the amount paid to Defendant on past cases in excess of quantum merit." Compl. ¶ 10 (emphasis added). Nowhere in his complaint does Mintzer suggest the precise amount that is at stake, instead only claiming that it exceeds $75,000. Similarly, Lester's answer-and-counterclaim makes no reference to the amount he claims he is due under the referral agreements, although he did stipulate to Mintzer's contention that the amount in controversy exceeds the jurisdictional amount. Of course the parties cannot stipulate to jurisdiction. Because the pleadings in this case are not helpful, we must consider other evidence that sheds light on the amount in controversy at the time Mintzer filed his complaint.

An affidavit submitted by Lester's attorney states that Lester is due approximately $26,000. The attorney reached this conclusion during the course of discovery. Lester's reply brief also claims $26,000. Mintzer, in his surreply, does not contest

the veracity of this amount or otherwise suggest that Lester amended his claim to avoid federal jurisdiction.  Instead, Mintzer argues that his setoff--the amount he allegedly overpaid Lester--is worth $176,000, and that therefore the jurisdictional amount is met.  Importantly, Mintzer is not seeking return of the amount exceeding the value of Lester's work.

We are constrained to conclude that the amount in controversy does not exceed $75,000.  Though the parties both initially argued that the value of the litigation did exceed the jurisdictional amount, subsequent discovery reveals that Lester all along was claiming only about $26,000 in damages.  The purported setoff is irrelevant.  It is an affirmative defense, not a claim for relief, *see Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 n.36 (5th Cir. 2001), being that it is entirely contingent on Lester sustaining his claim.[1]  An offset cannot therefore be included in the amount in controversy.  *See Wolde-Meskel v. Vocational Instruction Proj. Cmty. Servs., Inc.*, 166 F.3d 59, 63 & n.6 (2d Cir. 1999); *see also Rosen v. Chrysler Corp.*, 205 F.3d 918, 921-22 (6th Cir. 2000)(refusing to include defendant's setoff in determining the amount in controversy).

Depending on the substantive law of the state, attorney's

---

[1]  *See* BLACK'S LAW DICTIONARY 430 (7th ed. 1999)(defining affirmative defense as an "assertion raising new facts and arguments that, *if* true, will defeat the plaintiff's or prosecution's claim, even *if* all allegations in the complaint are true.")(emphasis added).

fees may also be considered part of the amount in controversy. *See* 14B WRIGHT, ET AL. § 3712. Both parties have asserted a claim for fees, but there is no evidence whatsoever of the amount they have incurred. Nor has either side discussed the issue in their briefs. Irrespective of whether attorney's fees would be permitted, we cannot simply guesstimate their amount and add them to the other damages to arrive at the amount in controversy. Some kind of allegation or proof of the amount of fees incurred is needed. *Cf. Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998). None here has been provided.

## CONCLUSION

In light of the foregoing, we REVERSE and REMAND with instructions to dismiss.[2]

---

[2] As we did at oral argument, we admonish the parties for tying up the courts with this vexatious litigation. It is a waste of our limited judicial resources and does not reflect well on either side.